Dodge & others *v.* Wilkinson.

JOHN C. DODGE & others *vs.* GEORGE WILKINSON

Where the owners of different mills on the same stream agreed to pay the several sums subscribed by them, for the purpose of raising a reservoir for the use of their mills, it was held, that they thereby became liable to each other to contribute to the expenses necessarily incident thereto, including damages thereby caused by flowing others' lands ; and that though one of the owners conveyed his right in his mill and in the reservoir, before judgment was recovered against the owners of the reservoir, by a land owner, for gross damages, yet he was liable to the other owners for his proportion of the amount of such damages, according to his proprietary interest in the reservoir at the time of his subscription.

And where, in such case, an owner of eight fifty-sixths of the reservoir, &c., subscribed a sum which amounted to eight thirty-ninths of the whole subscription, it was held, that he was not thereby bound to pay more than eight fifty-sixths of the subsequent expenses necessarily incident to the raising of the reservoir.

Since the statutes of the Commonwealth have authorized amendments by changing the parties to actions, a defendant must object, at the trial, to a misjoinder of plaintiffs, or he will be held to have waived the objection.

ASSUMPSIT for money paid. There was also a count for interest. The action was commenced on the 18th of December 1837, by John C. Dodge, Jesse Carpenter, Samuel Carpenter, Abiathar A. Richardson, Albert Carpenter, Thomas Harkness, and Thomas J. Stead.

The case had been sent to an auditor, who rejected various items of the plaintiffs' claim, and the only remaining question, as to the amount to which they were entitled, arose on two charges in their bill of particulars, as follows :

> 1834, Dec. 20.  To paid your proportion of expenses for flowage, and cost for raising of reservoir-dam in 1833 and 1834, on 8 feet, for 8 thirty-ninth parts, at $ 37·69 per foot,  .  .  .  $ 301·52
> Interest on do. to Dec. 18, 1837, one year and four days,                    $ 18·29

The auditor reported that the first of these charges was 8-39ths of an account of $ 1469·63, paid to Samuel Carpenter by the Reservoir Company, of which the defendant was a member, and was claimed by the plaintiffs under the following agreement, which the defendant admitted that he signed : " We, the undersigned, owners of the reservoir on Bungy River, agree to pay to such persons as may be authorized to receive it, the sums affixed to our respective names, for the purpose of raising

said reservoir six feet above its present height. Attleborough, September 12th 1833. S. Carpenter, agent Mechanics' Mfg. Co. $209. N. & J. C. Dodge, $297. Harkness & Stead, $176. George Wilkinson, $176."

As $176, the sum thus subscribed by the defendant (and which it was admitted that he had paid) was 8-39ths of the aggregate of the subscription, ($858,) the plaintiffs sought to recover of him the like proportion of the abovementioned account of $1469·63, to wit, $301·52. That account, as the auditor stated, was of moneys expended by the plaintiffs in paying damages &c., caused by the flowing of lands in consequence of the raising of the reservoir, as mentioned in the aforesaid agreement. The auditor further stated, in his report, that of the $1469·63, paid by the plaintiffs as aforesaid, $880·25 was paid to satisfy a judgment for gross damages, recovered at the September term, 1836, of the court of common pleas in Bristol, by Jacob Briggs against John C. Dodge, Jesse Carpenter, Remember Kent, Wellington Kent, Dwight Ingraham, Joseph Hawes, Nehemiah Dodge, Thomas Harkness, Thomas J. Stead, and George Wilkinson, the defendant, on a complaint against them for flowing his lands by raising the aforesaid reservoir : And that $61·50 was paid to A. Cushman " for legal services." The auditor's report concluded thus :

" The said reservoir is at the head of Bungy River, (so called) and was constructed for the benefit and use of persons owning mills on said river. The defendant, George Wilkinson, at the time of signing said agreement, was the owner of a mill called the Cove Mill, at the mouth of said river.

" The defendant says, that the moneys expended as aforesaid were for the right to flow hereafter, and that he is not liable for any part thereof, because he did, on the 29th of October 1834, convey all his right to said reservoir to Christopher Rhodes and others, as appeared by the deed," (which was produced before the auditor, and annexed to his report.) " The defendant further says, that if he be liable for any thing, it is only 8 fifty-sixth parts and not 8 thirty-ninth parts ; because he says, that by a deed from the present plaintiffs to the defendant. dated July

29, 1833, they conveyed to him eight undivided fifty-sixth parts in a certain water privilege and the lands and real estate where the same lies ; which is the reservoir meant in the agreement." (A copy of this deed was annexed to the auditor's report.)

" The plaintiffs contend that the defendant is liable for 8 thirty-ninth parts of said amount of $ 1469·93, in consequence of the agreement aforesaid.

" If the opinion of the court should be, that the defendant is liable for the whole claim of the plaintiffs, namely, 8 thirty-ninth parts of $ 1469·93, he will then be indebted to the plaintiffs in the sum of $ 301·52, on which interest should be cast from December 20, 1836. If he be liable for only 8 fifty-sixth parts of said sum of $1469·93, then he is indebted to the plaintiffs in the sum of $ 209·99, on which interest should be cast from December 20, 1836. If he be only liable on the Briggs' judgment, and for 8 fifty-sixth parts, then he is indebted to the plaintiffs in the sum of $125·75, on which interest should be cast from September 27, 1836. If his liability on said judgment be 8 thirty-ninth parts thereof, then he is indebted to the plaintiffs in the sum of $ 180·56, on which interest should be cast from September 27, 1836."

At the trial, before *Wilde J.* it was admitted that the said account of Samuel Carpenter with the Reservoir Company, which was produced by the plaintiffs, and was annexed to the auditor's report, was a true account of moneys paid and received by him ; that the $ 61·50, paid to A. Cushman, was for services as counsel for the Reservoir Company, in cases relating to the flowing of land by the keeping up of the reservoir dam to the heighth to which it was raised in the fall of the year 1833, and in the spring and summer of the year of 1834, in pursuance of the aforesaid agreement of the 12th of September 1833 ; and that all the other sums, charged in said account of Samuel Carpenter against the Reservoir Company, were paid with reference to flowing which had been, or might hereafter be, occasioned by keeping up said dam to the height aforesaid ; and therefore it was, that the auditor in his report said, that " all the above payments appear to have been made in consequence of raising the reservoir aforesaid, and with reference thereto."

Jonathan Bliss was called as a witness by the plaintiffs, and testified that Samuel Carpenter acted as agent for the company in the raising of the dam, which he believed was in 1832 or 1833. The witness knew of said Carpenter's paying or tender ing money to Jacob Briggs, as agent for the Reservoir Company.

The Reservoir Company, at the time of the tender to Briggs, was composed of Samuel Carpenter, Jesse Carpenter, Albert Carpenter, Nehemiah and John C. Dodge, Harkness & Stead, Dwight Ingraham, Remember and Wellington Kent, Joseph Hawes, and, as witness had supposed, George Wilkinson; but he did not know whether Wilkinson sold out before or after the tender; but Carpenter was then agent for the Reservoir Company, and so declared when he tendered the money to Briggs. The witness believed, but was not certain, that Abiathar A. Richardson was one of the Reservoir Company.

Nathaniel C. Dana was called as a witness by the defendant, and testified that he became one of the proprietors of the Cove Mill estate, under the grantees of George Wilkinson, in November 1834. In the spring or summer of the year 1835, Carpenter gave the witness notice to meet the Reservoir Company: He attended, and Carpenter and John C. Dodge were present. Early in the fall of the said year 1835, the witness had notice to attend a meeting of said company, on occasion of a reference relating to flowing by the dam of said company, and attended, but did not know what was done. On cross-examination, he said he had not agreed to become answerable for flowing, and took no interest in it.

A verdict was taken for the plaintiffs for $373·98, by consent, subject to the opinion of the whole court; and if, upon the whole case, the court shall be of opinion that said plaintiffs are entitled to recover in this action, then the verdict is to be so amended that judgment may be entered for said plaintiffs for such sum, as, upon the whole case, they shall adjudge that the plaintiffs are entitled to recover: Otherwise, the said verdict is to be set aside and the plaintiffs are to become nonsuit.

*Battelle* contended, for the defendant, that he ceased to be

liable for expenditures or damages on account of the reservoir,
after his conveyance of all his interest therein, in October 1834,
which was before the origin of any of the claims which are the
subject of this suit :   That if the plaintiffs and defendant were
jointly liable, by virtue of the agreement of September 12th
1833, and the expenses had been paid by the joint funds, then
N. Dodge ought to have joined as plaintiff :   That at the time
when the payments were made by Carpenter for the Reservoir
Company, there were five members thereof who have not joined
as plaintiffs in the present action, as they should have done, if
the plaintiff is liable to a joint action :   That if the defendant
was liable, in consequence of the judgment of Briggs, the others,
against whom it was recovered, did not, by paying it, acquire a
right to a joint action against the defendant ; and besides —
that judgment was rendered against five only of the seven plain-
tiffs, who prosecute the present action, and against five other
persons.   *Brand* v. *Boulcott*, 3 Bos. & Pul. 235.   *Osborne*
v. *Harper*, 5 East, 225.   *Converse* v. *Symmes*, 10 Mass. 377.
*Tom* v. *Goodrich*, 2 Johns. 213.   *Bowman* v. *Blodgett*, 2
Met. 308.   *Doremus* v. *Selden*, 19 Johns. 213.

*Coffin*, for the plaintiffs.

SHAW, C. J. ·  The exception of misjoinder of plaintiffs not
having been made at the trial, we think it now comes too late.
It is an exception which, if taken at the trial, might have been
obviated by an amendment.   The ample power, now given to
courts, to allow amendments without costs, renders this objec-
tion comparatively unimportant, when it does not affect the
merits of the case.   When therefore any of the plaintiffs may
recover, the exception of misjoinder should regularly be made
at the trial.   If not made then, it is waived.

The court are of opinion, that the defendant was not bound
by the express agreement, beyond the sum therein expressed ;
which has been paid.   Nor is that agreement conclusive evi-
dence of his equitable proportion of interest in the subject
matter of the agreement.   He may have agreed, and bound
himself by his contract, to pay more money than his equal pro-
portion of the specific sum given for the first cost.   But so far

as he is liable, on an implied promise, for charges and expenses subsequently incurred in pursuance of his agreement, made before he conveyed away his estate, we think he is liable for his just proportion thereof, according to his proprietary interest. By entering into the agreement to raise the reservoir, he became liable in equity to contribute to the expenses necessarily incident thereto ; and that personal liability was not discharged by afterwards conveying away the estate.

*Judgment for the plaintiffs, for* $ 209·99, *and interest from December* 20*th* 1836.